**AMERICAN PRESIDENT LINES, Limited, Plaintiff,**

v.

**FEDERAL MARITIME BOARD, Clarence G. Morse, Chairman and Maritime Administrator, Ben H. Guill, and G. Joseph Minetti, Members, Defendants.**

Civ. A. No. 2769-53.

United States District Court
District of Columbia.
July 29, 1955.

Warner W. Gardner and Alfred L. Scanlan, Washington, D. C., for plaintiff.

Warren E. Burger, Asst. Atty. Gen., Edward H. Hickey, Chief, General Litigation Section, Civil Division, Charles N. Gregg, Jr., Attorney, all Department of Justice, Washington, D. C., Elmer E. Metz, Acting General Counsel, and Edward R. Aptaker, Attorney, Federal Maritime Board, Washington, D. C., for defendant.

MORRIS, District Judge.

This is a proceeding in which the plaintiff American President Lines, Ltd., a subsidized shipping operator, seeks a declaratory judgment against the Federal Maritime Board and its individual members. The plaintiff asks this Court to rule that an earlier definition, as set forth in General Order 31, rather than a later definition, as set forth in General Order 71, of the statutory term "capital necessarily employed in his business", 46 U.S.C.A. § 1177, must be used by the Government in computing the net amount of subsidy accruing to the plaintiff for the period January 1, 1947, to September 30, 1948, under its operating differential subsidy contract with the United States. Under the Merchant Marine Act of 1936, 46 U.S.C.A. § 1171 et seq., provision is made for subsidy contracts with operators of American-flag ships engaged in foreign commerce. Under a subsidy contract an operator becomes entitled to receive subsidy payments not to exceed the difference between certain costs of operating American-flag ships and costs of similar items in operating foreign-flag ships. The contract provides that the subsidy so received be subject to recapture by the United States; that is, should the operator's net profit over a ten-year recapture period average more than 10 per cent per year upon the capital necessarily employed in his subsidy operation, he must pay to the United States an amount equal to one-half his profits in excess of 10 per cent per year as reimbursement of subsidy payments, provided that the United States may not recapture more than the amount of subsidy paid the operator. The Act further provides that operators with subsidy contracts must maintain a " 'capital reserve fund,' " 46 U.S.C.A. § 1177, the main purpose of which is to provide funds necessary for the purchase and replacement of subsidy vessels. A further provision is that operators with contracts must also maintain a "special reserve fund," into which are deposited all profits in excess of 10 per cent per year of the operator's "capital necessarily employed in his business" not already deposited in the capital reserve fund. It is to this latter fund that the United States looks for recapture in the first instance. The Act authorizes the Commission (later the Federal Maritime Board) to adopt and prescribe rules and regulations for the administration of the reserve funds, and

to include therein a definition of the term "capital necessarily employed in his business."

During World War II certain vessels of subsidized and unsubsidized American-flag operators alike were requisitioned by the United States, and all subsidy contracts were suspended. At the end of the war, the Maritime Commission, predecessor of the Federal Maritime Board, notified all subsidy operators, including the plaintiff, that they must apply for permission to resume subsidy operations, and must specify the scope of their proposed postwar services. The right to receive subsidies was made subject to an agreement by the operators to new conditions to be negotiated with the Commission, and to be incorporated into contracts, which were formally referred to as "resumption addenda" to the prewar subsidy contracts. Prior to resumption of subsidized operations the Commission notified all prewar subsidized operators, including plaintiff, that it intended to revise its General Order 31, which defined the term "capital necessarily employed," as roughly equivalent to net worth—that is, excess of assets over liabilities. Apparently the reserve funds, as a result of large earnings, had accumulated to such extent that the recapture of subsidy was practically nullified. In the complicated situation negotiations and conferences were had with a view of finding some proper solution. General Order 71, adopted December 21, 1949, defined "capital necessarily employed" as including ship equities, net working capital equal to voyage expenses, net equity in other physical assets employed in subsidized service, funded depreciation on subsidized vessels, an amount equal to a 25 per cent down payment on new subsidized vessels under executed purchase contracts, and a certain minimum amount required by statute to be retained in the special reserve fund. There was much discussion and disagreement as to when this definition should become effective in that the operators felt that, if it became effective January 1,

1947, there would not be reasonable allowance for the fact that they must hold ready large amounts of cash for the acquisition of ships not immediately available in the postwar period. It was proposed that, if such definition was to be made effective January 1, 1947, it should include funds actually expended between January 1, 1947 and December 31, 1949, to acquire vessels to be used in subsidized service. The Commission did not accept this suggestion, but, in adopting General Order 71, it did make the new definition effective for each operator only at the end of his ten-year recapture period current on December 31, 1946, leaving the General Order 31 definition in effect until that time. Seven operators reached agreement with the Commission and "resumption addenda" contracts were executed with them. Certain operators, including the plaintiff, did not reach agreement. The plaintiff did execute a "resumption addenda" contract October 5, 1951. After numerous negotiations, proposals and counter-proposals, and during which time the Federal Maritime Board, successor to the Commission, undertook to reconsider further the definition of "capital necessarily employed" and its effective date. Such "resumption addenda" contract was executed only upon securing the operator's agreement therein to accept the Board's ultimate decision fixing the definition of "capital necessarily employed" and its effective date. On September 17, 1952, the Board issued General Order 71, Amendment 1, in which it was decided that the General Order 71 definition of "capital necessarily employed" could not, as to the subsidized contracts of the operators who, as heretofore stated, first entered into "resumption addenda" contracts, apply before termination of their respective recapture periods current December 31, 1946. It was further decided that such definition should be applied from January 1, 1947, to those operators, including the plaintiff, who had agreed in their "resumption addenda" contracts to accept the Board's change in the definition of

"capital necessarily employed" and the effective date thereof. In fixing this effective date, however, the Board amended the definition itself to include, as the operators had requested in 1947, amounts actually disbursed from the capital reserve fund between January 1, 1947 and December 31, 1949, for the acquisition or improvement of vessels for subsidized operations.

The contention of the plaintiff here is that this determination of the Board was discriminatory and invalid, and should be so declared by this Court by a declaratory judgment. At the threshold of the inquiry, the question arises as to whether or not this Court has jurisdiction of this controversy. Oral arguments of counsel were had on this question, and, in response to a request of the Court, briefs were submitted on behalf of the respective parties. It is the contention of the plaintiff that the Court does have jurisdiction in that the Court has the jurisdiction to declare invalid any regulation adopted which is not authorized by, or is contrary to, applicable statutory law; that the consent given by the plaintiff in the "resumption addenda" contract cannot be considered to include any illegal or invalid regulation or action, and that this proceeding is not in the nature of a suit against the United States, to which it has not consented. The contention of the defendants is that it is essentially a suit against the United States, to which it has not consented; that the action of the Board complained of is essentially a matter of contractual rights and obligations between the plaintiff and the United States, and that this Court does not have jurisdiction to proceed to a determination of the merits of this controversy.

Aside from the merits of the contention that the action of the Board is discriminatory and invalid, upon which question I express no opinion, it is clear that the ultimate effect of a decision of that question will determine whether or not very large sums of money will be paid into the Treasury of the United States, or whether or not such sums of money are the property of the plaintiff, to which it is entitled. Unquestionably, if the money is wrongfully exacted from the plaintiff by virtue of its contract obligations, it has a clear remedy by reason of the consent of the United States to be sued in the Court of Claims. That court unquestionably has the right to consider and determine the validity of the action of the Board, and should it determine the questioned action to be invalid, there can be no doubt that the plaintiff would receive the complete relief it seeks, even as to those funds which it is required to deposit in the special reserve fund. I cannot agree with the contention of the plaintiff that the determination here sought is independent of the provisions of the "resumption addenda" contract, but, on the contrary, it seems to me to be of the very warp and woof of that contract as it is construed by the Government in its relation to the controversy here presented. I cannot see how the interests of the United States in the fund in question can be determined in a controversy to which the United States is not a party.

For the reasons stated, the complaint will be dismissed.

Counsel will submit an order carrying this decision into effect.